(118 App. Div. 727)

INGOLD v. GILMORE.

(Supreme Court, Appellate Division, First Department.　March 22, 1907.)

COURTS—JURISDICTION—STATE AND FEDERAL COURTS—WINDING UP NATIONAL BANK.

　　Under Act Cong. June 30, 1879, § 3, c. 52, 21 Stat. 43 [U. S. Comp. St. 1901, p. 214], providing that, when any banking association shall have been placed in the hands of a receiver and the comptroller of the currency shall have paid all claims allowed, the stockholders may elect an agent to wind up the affairs of the association, who shall sue and be sued and do all other acts necessary to finally settle and distribute the property, and may sell, compromise, or compound the debts due the association with the consent and the approval of the United States court, and shall, at the conclusion of his trust, render to such court a full account, a state court has jurisdiction of an action by stockholders to compel an agent so appointed to distribute to them property collected by him.

Appeal from Special Term.

Action by William F. Ingold against Edward G. Gilmore. From a judgment overruling the demurrer, the defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Charles A. Hess, for appellant.

C. A. Mountjoy, for respondent.

INGRAHAM, J. The plaintiff sues as a stockholder of the Equitable National Bank, a corporation organized under the laws of the United States, on behalf of himself and all other stockholders of the corporation who may elect to come into the action.

The complaint alleges that the Equitable National Bank, a banking corporation organized under the national banking act, went into voluntary liquidation, and that one Ridgely was appointed receiver by the Comptroller of the Currency; that subsequently the defendant was elected by the stockholders as their agent to continue the liquidation and wind up the affairs of the bank, and that all of the depositors of said bank had been paid in full, and the defendant has in his hands a large amount of money and assets belonging to said bank undistributed to which the plaintiff and the other stockholders were entitled; and the relief asked is that the defendant account as such stockholders' agent, and that a distribution of the property of the bank be made among the stockholders. The defendant demurred to this complaint on the ground that the court had no jurisdiction of the defendant, or of the subject-matter of the action, which was overruled and defendant appeals.

Section 3 of the act of Congress of June 30, 1879 (c. 52, 21 Stat. 43 [U. S. Comp. St. 1901, p. 214]), provides that whenever any association shall have been or shall be placed in the hands of a receiver, and when the Comptroller of the Currency shall have paid to each and every creditor of such association whose claim or claims as such creditor shall have been proved or allowed as therein prescribed the full amount of such claims, and all expenses of the receivership and the redemption of the circulating notes of such association shall have been provided for, the Comptroller of the Currency shall call a meeting of the shareholders of the association, and at such meeting the shareholders shall determine whether the receiver shall be continued and shall wind up the affairs of such association, or whether an agent shall be elected for that purpose. In case a majority shall determine that an agent shall be elected, the said meeting shall thereupon proceed to elect an agent, whereupon the Comptroller and the receiver shall transfer and deliver to such agent all the undivided or uncollected or other assets of such association then remaining in the hands or subject to the order and control of said Comptroller, and said receiver, or either of them. Upon receiving such assignment, transfer, or other instrument, the person elected such agent shall hold, control, and dispose of the assets and property of such association for the benefit of the shareholders of such association, and he may in his own name, or in the name of such association, sue and be sued, and do all other lawful acts and things necessary to finally settle and distribute the assets and property in his

hands, "and may sell, compromise, or compound the debts due to such association, with the consent or approval of the Circuit or District Court of the United States for the district where the business of such association was carried on, and shall at the conclusion of his trust render to such District or Circuit Court a full account of all his proceedings, receipts and expenditures as such agent, which court shall, upon due notice, settle and adjust such accounts and discharge said agent and the sureties upon said bond, * * * that the agent shall give a bond" to be approved "by a judge of a court of record, and file said bond in the office of the clerk of a court of record in the county where the business of said association was carried on. * * * The proceeds of the assets or property of any such association which may be undistributed at the time of such meeting or may be subsequently received shall be distributed as follows: First. To pay the expenses of the execution of the trust to the date of such payment. Second. To repay any amount or amounts which have been paid in by any shareholder or shareholders of such association upon and by reason of any and all assessments made upon the stock of such association by the order of the Comptroller of the Currency in accordance with the provisions of the statutes of the United States; and third, to divide the balance ratably among such stockholders, in proportion to the number of shares held and owned by each. Such distribution shall be made from time to time as the proceeds shall be received and as shall be deemed advisable by the said Comptroller or said agent." This agent, elected by the stockholders, occupied an entirely different position from a receiver appointed by either the United States court or the Comptroller of the Currency. He is elected by the stockholders, and receives the assets of the bank in trust for them. He may sue and be sued without leave of any court, and may do all other lawful acts and things necessary to finally settle the affairs of the association and distribute the assets and property in his hands among the stockholders. The Act of Congress provides how he may be appointed, but, having once been appointed, he becomes the agent of the stockholders to liquidate the affairs of the association for their benefit. But when Congress allowed the stockholders of the bank to liquidate its affairs by appointing an agent for that purpose, and by such appointment taking out of the hands of the officials of the United States the control of the undistributed assets of the bank and intrusting such control to the agent appointed by the stockholders, it would appear that the stockholders had the right to enforce the performance of the trust by their agent in such courts as would have jurisdiction for that purpose over any trustee or agent. The statute gives the courts of the United States control over such an agent in two particulars. In the first place, the agent is authorized to "sell, compromise or compound the debts due to such association, with the consent and approval of the Circuit or District Court of the United States for the district where the business of such association was carried on," and the agent, at the conclusion of his trust, is required to render to such Circuit or District Court a full account of his proceedings, receipts, and expenditures as such agent, which court shall, upon due notice, settle and adjust such accounts and discharge said agent and

the sureties upon said bond. The authority to compromise debts due to the association, with the approval of the United States Circuit or District Court, has no relation to enforcing the rights of the stockholders against the agent. There is a clear distinction between an action brought to require the agent to distribute the assets and the approval of his accounts after the assets are all collected and distributed. One has relation to the discharge of the agent from his liability as agent and the release of his sureties after his duties are completed, and the other is to require the agent to perform his trust and to make the distribution. A court of equity has general jurisdiction over trustees and agents to compel them to account; and, whatever the source of the agency, it assumes jurisdiction over the agent or trustee to compel him to perform his trust. I can find nothing in this act which takes this agent out of the general jurisdiction of a court of equity. The statute expressly provides that the agent may sue and be sued, and such suits are not limited to actions brought in the federal courts. I suppose there could be no doubt that, if this agent had in his possession property belonging to a third party which he had received by transfer from the receiver or Comptroller of the Currency, the owner of the property could maintain an action against the agent to recover the possession of it in a state court, as well as the federal courts. The agent has in his possession all the property and assets of this association which belonged to its shareholders. An accounting is necessary so as to ascertain the amount that each shareholder is entitled to receive; and any court of equity having jurisdiction over the person of the agent has power to compel him to execute the trust and supervise its execution. It may well be that after the trust is completed under the authority of a judgment of a competent court of equity the agent will be required to file with the federal court an account of his proceedings, but that is not at all inconsistent with the jurisdiction of a court of equity to compel him to perform his duties and execute the trust. The fact that the plaintiff asks more relief than he would be entitled to is not a ground of demurrer. The court has jurisdiction to grant any relief that may be necessary to enforce the execution of the trust.

In re Chetwood, 165 U. S. 445, 17 Sup. Ct. 385, 41 L. Ed. 782, is in line with this conclusion. It was there held that a receiver appointed by the Comptroller of the Currency was not an officer of any court, but an agent and officer of the United States, and that a state court had jurisdiction against a receiver of a national bank appointed by the Comptroller of the Currency in an action brought by a stockholder on behalf of the bank to enforce obligations due to the bank and to which the receiver was a party; that the substitution of an agent for a receiver did not oust the jurisdiction of the state courts; that he was no more an officer of the Circuit Court in the first instance than a receiver was, and then, after quoting the statute, the court said:

"But there is nothing in the language of the statute from which it can be inferred that it was the intention that the jurisdiction of state courts of competent and concurrent jurisdiction, first obtained, should be interfered with by restraining orders issued by federal courts on the application of such an agent. The agent may, indeed, intervene in a case in the state court and receive the

fruits of the litigation to be administered subject to the final approval of the federal court."

The same rule was followed by the Circuit Court of Appeals in Guarantee Co. of North Dakota v. Hanway, 104 Fed. 369, 44 C. C. A. 312. As the jurisdiction of a court of equity attaches to all trustees, the court has power to compel any trustee or agent to account. The Supreme Court of the state has, therefore, jurisdiction to compel the defendant to execute his trust; and has, therefore, jurisdiction both of the subject of the action and the person of the defendant.

It follows that the judgment appealed from is affirmed, with costs, with leave to the defendant to withdraw demurrer, and to answer, on payment of costs in this court and in the court below. All concur.

